UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE
CIVIL ACTION NO. 7:19-cv-00020-KKC

ALISHA CONGLETON                                                    PLAINTIFF

-vs-

MICKEY STINES, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
AS LETCHER COUNTY SHERIFF                                           DEFENDANT

---

**MEMORANDUM BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

Comes the Defendant, MICKEY STINES, INDIVIDUALLY and IN HIS OFFICIAL

CAPACITY AS LETCHER COUNTY SHERIFF, by and through counsel, and for his

Memorandum of Law in support of his Motion for Summary Judgment state as follows:

## I.      INTRODUCTION

Plaintiff filed an unverified complaint on February 14, 2019 alleging she was not retained

as a deputy sheriff due to allegations of political retaliation. R. 1, Compliant. Plaintiff alleges

that she was employed as a deputy sheriff for four years until December 2018. *Id*. ¶ 1. Plaintiff

alleges that she applied to continue as a deputy sheriff but was not hired due to the exercise of

her First Amendment rights and association during the Letcher County Sheriff political

campaign. *Id*. ¶ 3. Plaintiff claims that in January 2019 Defendant Stines declined to continue

her employment based on retaliation for the Plaintiff's exercise of her First Amendment rights

during the 2018 campaign. Id. ¶ 4. Proof in this matter demonstrates that Plaintiff's employment

was terminated by the former sheriff and weeks prior to the Defendant taking office.

1

## II.   SUMMARY JUDGMENT STANDARD

Present federal summary judgment practice is a result of three decisions handed down by the United States Supreme Court in 1986.  See *Street v. J. C. Bradford & Co.*, 886 F. 2d 1472 (6th Cir. 1989).  *Street* appraised the impact of the three Supreme Court cases and concluded that the following principles for summary judgment practice had been established:

(1)   Complex cases are not necessarily inappropriate for summary judgment.

(2)   Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

(3)   The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

(4)   This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

(5)   A court should apply a federal directed verdict standard in ruling on a motion for summary judgment.  The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law."

(6)   As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

(7)   The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

(8)   The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment".

(9)   The trial court no longer has the duty to search the entire record to establish that it is benefit of a genuine issue of material fact.

(10)   The trial court has more discretion than in the "old era" in evaluating the

respondent's evidence. The respondent must do more than simply show that there is some metaphysical doubt as to the material facts. Further, where the record taken as a whole could not lead a rational trier of fact to find for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.

*Street v. J. C. Bradford & Co.*, *supra*, at 1479-1480.

The United States Court of Appeals for the Sixth Circuit in *Street* held that the nonmoving party must produce enough evidence, after having had a reasonable opportunity to conduct discovery, so as to withstand a directed verdict motion. *Id.* at 1477. As the court stated, "the movant could challenge the opposing party to 'put up or shut up' on a critical issue...[and] if the respondent did not 'put up,' summary judgment [is] proper." *Id.* at 1478.

Applying the above-stated summary judgment principles to this case, it is apparent that the depositions, answers to interrogatories, affidavits and exhibits in the record, when viewed in a light most favorable to the plaintiffs, do not establish any genuine issue of material fact. Therefore, the defendants are entitled to summary judgment as a matter of law as to all claims asserted against them. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir. 1989); *Street v. J. C. Bradford & Co.*, supra.

## III. <u>STATEMENT OF THE CASE</u>

### <u>ALLEGATIONS OF THE COMPLAINT</u>

Plaintiff filed her unverified complaint on February 14, 2019 alleging she was not retained as a deputy sheriff due to allegations of political retaliation. R. 1, Compliant. Plaintiff alleges that she was employed as a deputy sheriff for four years until December 2018. *Id*. ¶ 1. Plaintiff alleges that she submitted an application to continue as a deputy sheriff but was not

hired due to the exercise of her First Amendment rights and association during the Letcher County Sheriff political campaign. *Id*. ¶ 3. Plaintiff claims that in January 2019 Defendant Stines declined to continue her employment based on retaliation for the Plaintiff's exercise of her First Amendment rights during the 2018 campaign. Id. ¶ 4

Per the Complaint, during the May 2018 Democratic Primary, the Plaintiff openly campaigned for Eugene Slone, the Defendant's opponent by speaking with neighbors and making social media posts. *Id*. ¶ 5. The Plaintiff allegedly was told that her job would be in danger if Stines was elected due to her openly campaigning against him. *Id*. Plaintiff alleges that during the November 2018 election she openly supported and campaigned for independent candidate Barry Engle against Defendant Stines. Id. ¶ 6.

Plaintiff alleges that Stines made numerous comments to individuals complaining that the Plaintiff was campaigning in the Jenkins area and that she was hurting his election chances. *Id*. ¶ 8. Plaintiff sets forth claims under the First and Fourteenth Amendments and alleges that the Defendant violated her First Amendment Right of speech and association by failing to rehire her. Plaintiff is seeks recovery against Sheriff Stine in his individual and official capacity.

The Plaintiff has demanded trial by jury, judgement against the defendants jointly and severally for actual damages and interest thereon at the legal rate; general and compensatory damages with interest thereon at the legal rate; punitive damages, and; an award for costs and reasonable attorney's fees.

## FACTS OBTAINED THROUGH TESTIMONY

The deposition of Plaintiff **Alisha Congleton** was taken in an unrelated state court matter on July 9, 2019 as a witness. See Exhibit 1, Deposition Transcript. Plaintiff testified that her employment ended with the Letcher County Sheriff's Office in December 2018. *Id*. at p. 5. This

was towards the end of the former Sheriff's term. *Id*. at p. 46.  Attached to Plaintiff's testimony

as Exhibit 4 is a letter from former Sheriff Danny R. Webb which states:

> Dear Alisha,
>
> I wanted to personally thank you for your service to the Letcher County Sheriff's Department. I will never forget all the hard work that you put in so that our department would be successful.
>
> I remember when you first started dispatching for us when first entered the field of law enforcement. I am so proud of you for becoming one of the best police officer's I have had the pleasure of working with during my career.
>
> **I wish that everything could have turned out better for you, but sometimes we have to play the cards we are dealt. I hope that you will land on your feet**, and continue your work as a police officer.

*See Id.*,, Exhibit 4; *See also* <u>Exhibit 2</u>.

Plaintiff testified that it is her belief that Defendant does not like her. *Id*., p. 59.

Plaintiff testified that she was aware that during her employment under former sheriff

Webb that an issue had been raised in a criminal matter regarding Plaintiff's use of a

medical benefits card issued to her by the county. *Id*. at p. 51.  An issue was raised (not

by the Defendant) about how the card was used by Plaintiff and benefits were spent. *Id.*

The card was to be used to assist with prescription purchases, medical supplies and things

like that. *Id*. at p. 52.  Plaintiff was obtaining cash off the card. *Id.* at p. 53.  A lady that

Plaintiff was investigating worked at a local pharmacy and had alleged that Plaintiff was

improperly obtaining cash from the card which was to be used for medical related

expenses. *Id*. at p. 54.  Plaintiff's wife's sister formerly owned the pharmacy and

Plaintiff's wife's mother worked at the pharmacy where she obtained the cash from the

card. *Id.* at p. 55.  Plaintiff was one of four deputies laid off effective December 13, 2018

by former sheriff Danny Webb. *See* <u>Exhibit 3</u>, letter dated December 13, 2018 attached to discovery responses by Plaintiff.

Attached as <u>Exhibit 4</u> is a copy of the subpoena and return letter to Hon. Dan Dotson in August 2018 regarding inquiries into Plaintiff's card use. Attached as <u>Exhibit 5</u> is a social media post "as a matter of public concern" by Plaintiff *post-election and prior to Defendant taking office* announcing that (1) she could never support Defendant's administration a sheriff, (2) that she alleged Defendant had no moral compass, (3) did not have the training necessary to be sheriff and (4) shaming those who voted to elect the Defendant. Plaintiff did not apply for employment with the Defendant until a couple of weeks into his term on January 17, 2019. *See* <u>Exhibit 6</u>, Application.

Defendant **Mickey Stines** has testified by affidavit that:

"I am aware that there was an investigation during 2018 into allegations that Plaintiff improperly used her "benefits card" at certain pharmacy where she had family members working to obtain cash. These are cards issued to county employees to assist with medical bills and prescriptions – not to be used as an ATM card. Due to Plaintiff's relationship with those working at the pharmacy she was able to manipulate the system to improperly obtain cash from this card at the expense of the county. As a result of Plaintiff's actions, it is my understanding that she was being investigated for felony theft prior to the end of her employment with the sheriff's office. I am aware that there are interview tapes where Plaintiff has admitted that she had improperly obtained cash payments from the card.

Additionally, I am aware of complaints that while serving as a deputy Plaintiff would identify individuals as "rats" on social media, would place photos of accident victims on social media, and during election season was accused of campaigning on county time and while in uniform. Plaintiff went so far at times to stand in the sheriff's office during the election season and tell others, including employees, that I was a drug dealer.

Other deputies that worked under Sheriff Webb were offered positions once I took office. These deputies included Mike Enfuse, Lashawnda Frazier, Eugene Slone (who ran against me) and Sidney Fields. Plaintiff's employment was terminated by the former sheriff – not by me. Plaintiff's political activities, exercise of her

free speech rights, nor any other protected conduct had nothing to do with the decision not to hire Plaintiff as a deputy once I took office."

*See* Exhibit 7, Affidavit of Mickey Stines.

The present Kentucky Constitution requires the election of a sheriff in each county to a four year term. Mickey Stines was elected sheriff in November 2018 and began his tenure as Sheriff of Letcher County in January 2019. The sheriff may appoint one or more deputies, as well as certified court security officers, to serve at his or her pleasure (KRS 70.030). The deputies may perform any duties the sheriff may perform (KRS 61.035). The sheriff is liable for the acts or omissions of the deputies, but the liability is that of the office of sheriff and not the individual (KRS 70.040).

## IV. ARGUMENT

### A.    FIRST AMENDMENT CLAIMS SHOULD PROPERLY FAIL AS A MATTER OF LAW.

Plaintiff's employment was terminated by Defendant's predecessor in office. In *Blair v. Meade*, the Sixth Circuit held that to establish that an employment decision violated his First Amendment rights, a plaintiff need not assert that he had an entitlement to the position, promotion, or transfer. *See* Blair v. Meade, 76 F.3d 97 (6th Cir. 1996); *see also Boger v. Wayne County*, 950 F.2d 316, 321 (6th Cir.1991). The Supreme Court has specified that:

> "*Even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially his interest in freedom of speech.*"

*Rutan v. Republican Party of Illinois*, 110 S.Ct. 2729, 2736 (1990) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). The government is not always prohibited from denying

employment because of a person's political views, however, it is widely recognized that an elected official, in order to implement his policies effectively, must be permitted to select like-minded individuals to fill certain positions. As a general matter, patronage dismissals violate the First Amendment except where "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980).

A public employee who seeks to establish a First Amendment violation based on their discharge from employment (or adverse employment action) must demonstrate that (1) his / her speech was constitutionally protected, and (2) such speech was a substantial or motivating factor in her discharge. *Jackson v. Leighton,* 168 F.3d 903, 909 (6th Cir.1999) (citing *Bd. of County Com'rs, Wabaunsee County, Kan. v. Umbehr,* 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996)). If the employee makes this showing, the government can avoid liability "by showing that it would have taken the same action even in the absence of the protected conduct." *Id.*

To satisfy the final element of plaintiff's prima facie case, Plaintiff must present sufficient evidence to allow a reasonable fact finder to conclude, by a preponderance of the evidence, that his speech was a 'substantial' or a 'motivating factor' in the Defendants' decision. The Sixth Circuit has stated that to survive summary judgment, "the nonmoving party may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent. Rather, the employee must link the speech in question to the defendant's decision to [demote] her." See *Painter v. Campbell County Bd. of Educ.*, 417 F.Supp.2d 854, 863 (2006) citing *Bailey v. Floyd County Bd. of Educ.,* 106 F.3d 135, 145 (6th Cir.1997) (citation omitted).

In determining whether speech is constitutionally protected, the court undertakes a two-part inquiry: First, the court must determine whether the plaintiff's speech touched on a matter of public concern. Second, if the court determines that the speech involved a matter of public concern, the court must apply the balancing test set forth in *Pickering v. Board of Education of Township High School District 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *Farmer v. Cleveland Public Power,* 295 F.3d 593, 599-600 (6th Cir.2002).

Whether speech addresses a matter of public concern is a question of law. *Id.* at 600. A matter of public concern generally involves a "matter of political, social, or other concern to the community." *Leighton,* 168 F.3d at 909 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).  A determination of whether speech involves a matter of public concern must be based on the "content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147-48, 103 S.Ct. at 1690. The motive underlying an employee's statement is a relevant, but not necessarily dispositive, factor in considering whether the statement may be fairly characterized as relating to a matter of political, social, or other concern to the community. *Chappel v. Montgomery County Fire Prot. Dist. No. 1,* 131 F.3d 564, 576 (6th Cir.1997) (citing *Cliff v. Bd. of Sch. Com'rs of Indianapolis, Ind.,* 42 F.3d 403, 409 (7th Cir.1994)). Speech may be protected even though only a part of it touches on a matter of public concern. *Banks v. Wolfe County Bd. of Educ.,* 330 F.3d 888, 892 (6th Cir.2003).  Here, the record is clear that Plaintiff's employment with the Letcher County Sheriff's Department had ended prior to Defendant taking office.

In order to establish that protected speech was a substantial or motivating factor in the employee's discharge, the employee must point to " 'specific, nonconclusory allegations' reasonably linking her speech to employer discipline." *Bailey v. Floyd County Bd. of Educ. By*

*and Through Towler,* 106 F.3d 135, 144 (6th Cir.1997). The plaintiff "may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent." *Id.* at 145.

Here, there is no proof of record to indicate that the plaintiff was subjected to political wrongs at the hand of Defendant Stines. The record is clear that Plaintiff's employment had ended prior to Sheriff Stines taking office. In fact, Defendant Stines offered positions to most of the prior sheriff's deputies – including Deputy Slone who had ran against him.

### B. THE POSITION OF SERGEANT IS INHERENTLY CONFIDENTIAL AND SUBJECT TO PATRONAGE DISMISSAL

Plaintiff served as a Sergeant with the Letcher County Sheriff's Department prior to her dismissal. In that capacity she was third in rank under the sheriff and had court security personnel and deputies under her. *See* Exhibit 1, Congleton, p. 68. When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom. See, e.g., *Waters v. Churchill*, 511 U.S. 661, 671, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion) ("[T]he government as employer indeed has far broader powers than does the government as sovereign"). Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services. *Connick v. Myers,* 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) ("[G]overnment offices could not function if every employment decision became a constitutional matter"). Public employees, moreover, often occupy trusted positions in society. When they speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions. *Garcetti v. Ceballos*, 547 U.S. 410, 418-419 (2006).

As in most county clerk offices, sheriff offices and other constitutional offices in Kentucky, it is clearly established that an incoming sheriff has the ability to hire the chief deputy of their choice. In _Elrod v. Burns_, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court held that patronage dismissals (i.e., dismissals for failure to support a particular candidate or party) violate the First Amendment. In _Branti v. Finkel_, 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the Supreme Court recognized that, although patronage dismissals are generally unconstitutional, "party affiliation may be an acceptable requirement for some types of government employment." Id. "While these positions have been referred to as 'policymaking' or 'confidential,' whether those labels appropriately fit the position under consideration is not the ultimate inquiry." _Lane_, 490 F.3d at 419 (citing _Branti_, 445 U.S. at 518, 100 S.Ct. 1287). The ultimate inquiry is "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Id. To determine whether political affiliation is appropriate in making a personnel decision, "we must examine the inherent duties of that position and the duties that the new holder of that position will perform." _Baker v. Hadley_, 167 F.3d 1014, 1018 (6th Cir.1999) (quoting _Faughender v. City of N. Olmsted_, 927 F.2d 909, 913 (6th Cir.1991)). While making this determination does not depend on the plaintiff's actual job duties, those duties "may nonetheless serve as evidence of the duties inherent in the position." Id. (quoting _Feeney v. Shipley_, 164 F.3d 311, 320 (6th Cir.1999)). The Supreme Court has held that Elrod and Branti apply to patronage promotion and hiring practices as well as to dismissals. _Rutan v. Republican Party of Ill._, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

In _McCloud v. Testa_, 97 F.3d 1536, 1557 (6th Cir.1996), the Sixth Circuit outlined four categories of government positions that will always qualify for patronage exceptions: (1) those

that are specifically named in a relevant statute or that are charged with the discretionary authority to carry out the law or other policy of political concern; (2) a position to which discretionary decisionmaking of the first category has been delegated; (3) confidential advisors who spend a significant amount of their time advising category-one employees on how to exercise their statutory policymaking authority, or other employees who control the lines of communications to category-one employees; and (4) positions filled to balance out party representation.  It is Defendants assertion that even had the Defendant terminated Plaintiff (which he did not) the position of sergeant by the nature of the position qualify as category 2 and 3 positions above.

The burden of proof for patronage cases was set forth in *Branti*. First, a plaintiff must make out a prima facie case that she was discharged (or, in this case, not rehired) because of political affiliation. *Branti*, 445 U.S. at 518, 100 S.Ct. 1287; see also *Faughender*, 927 F.2d at 915 (citing the plurality in *Elrod*, 427 U.S. at 367, 96 S.Ct. 2673). If the plaintiff succeeds in making that showing, the defendant must then show that the position is of a type that would qualify for an exception to the rule against patronage dismissals. *Id*.  To date, Plaintiff has failed to make out a prima facie case.

The position of Sergeant is an inherently confidential one. *McCloud* category-three employees are confidential advisors who spend a significant portion of their time on the job advising category-one employees on how to exercise their statutory authority with respect to enforcement of laws or the carrying out of some policy of political concern. Or they may be other employees who control the lines of communications to category-one employees. *McCloud*, 97 F.3d at 1557.

As acknowledged by the 6th Circuit in *Heggen v. Lee*, 284 F.3d 675, 685-686 (2002)

other circuits have found that the position of deputy sheriff would be subject to patronage dismissal. *See e.g., Jenkins v. Medford*, 119 F.3d 1156, 1164 (4th Cir.1997) (holding that under North Carolina law deputy sheriffs are subject to patronage dismissals); *Upton v. Thompson*, 930 F.2d 1209, 1218 (7th Cir.1991) ("deputy sheriffs operate with a sufficient level of autonomy and discretionary authority to justify a sheriff's use of political considerations when determining who will serve as deputies"); *Terry v. Cook*, 866 F.2d 373, 377 (11th Cir.1989) (allowing sheriff to refuse to rehire any deputies from the previous administration as "loyalty to the individual sheriff and the goals and policies he seeks to implement through his office is an appropriate requirement" of the deputy sheriff position); *but see Ruffino v. Sheahan*, 218 F.3d 697, 699, 701 (7th Cir.2000) (holding that sheriff was not entitled to qualified immunity as disputed issue of material fact existed regarding whether he fired deputy sheriffs, who principally provided courtroom security, for political reasons); *Cutcliffe v. Cochran*, 117 F.3d 1353, 1357 (11th Cir.1997) (holding that because it was bound by *Terry,* panel could not conduct a factual determination as required by *Branti* to determine whether plaintiffs' positions as deputy sheriffs implicate partisan political concerns; however, recognizing that under *Branti*, political fealty may not be implicated where deputy sheriffs merely investigate crimes, patrol the roads or transport inmates); *Jenkins,* 119 F.3d at 1166 (Motz, J., dissenting) (stating that majority opinion's "wholesale pronouncement," based largely on broad state statutory language, that all orth Carolina deputy sheriffs are policymakers and subject to patronage dismissals in lieu of case-by-case analysis of the position held by and specific duties of the individual plaintiffs, fails to comport with *Branti* ).

In *Heggen*, the Court explained "as we have explained, under *Hall,* we must determine whether the patronage dismissals are appropriate on a case-by-case basis, considering the record

before us." *See* <u>Heggen</u> at 686 citing *Hall,* 128 F.3d at 429. Under Kentucky law the sheriff may appoint one or more deputies, as well as certified court security officers, to serve at his or her pleasure (KRS 70.030). The deputies may perform any duties the sheriff may perform (KRS 61.035). The sheriff is liable for the acts or omissions of the deputies, but the liability is that of the office of sheriff and not the individual (KRS 70.040). Plaintiff testified that there were usually only 3 to 5 employees that worked at the Letcher County Sheriff's Office on any given day. *See* Exhibit 1, p. 7. Plaintiff went on to describe the relatively small size of the department. *Id.* at p. 68. Given the size of the department, Defendant also argues that not only would the sergeant be subject to patronage dismissal, but that all deputies would be subject to patronage dismissals. *See i.e. Upton v. Thompson,* 930 F.2d 1209, 1215 (7th Cir.1991) ("[p]articularly in a small department, a Sheriff's core group of advisers will likely include his deputies"). Again however, Plaintiff was terminated prior to Sheriff Stines taking office.

**C. <u>DEFENDANT OFFERS PROOF BY A PREPONDERANCE OF THE EVIDENCE THAT THE SAME EMPLOYMENT DECISION WOULD HAVE BEEN MADE ABSENT ANY ALLEGED PROTECTED CONDUCT AND THUS PLAINTIFF'S CLAIM MUST FAIL.</u>**

The Defendants offer objective evidence as justification that the same employment decisions would have been made absent the alleged protected conduct. Plaintiff was separated from her employment by the prior sheriff, not the Defendant. As of the date of her termination Plaintiff had no further property interest in employment. The Defendant was aware of a criminal investigation into Plaintiff's conduct that left her unsuitable for employment. Further, Plaintiff waited over two weeks into Defendant's term to submit an application for employment. See Exhibit 6, application. This was after Plaintiff had publicized a post "*as a matter of public concern*" by Plaintiff *post-election and prior to Defendant taking offic*e announcing that (1) she

could never support Defendant's administration a sheriff, (2) that she alleged Defendant had no moral compass, (3) did not have the training necessary to be sheriff and (4) shaming those who voted to elect the Defendant. *See* Exhibit 5.

### D. DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW FOR THOSE CLAIMS ASSERTED AGAINST HIM IN HIS INDIVIDUAL CAPACITY.

In the Sixth Circuit, public officials performing "discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992). When the defense of qualified immunity is raised within the context of a motion for summary judgment, the non-movant must allege facts sufficient to indicate that the act in question violated clearly established law at the time the act was committed. Dominque v. Telb, 831 F.2d 673, 677 (6th Cir. 1987). The ultimate burden of proof is on the plaintiff to prove that the defendant is not entitled to qualified immunity as a matter of law. Wegener v. City of Covington, 930 F.2d 390, 392 (6th Cir. 1991); Rich v. City of Mayfield Heights, 995 F.2d 1092, 1095 (6th Cir. 1992).

The Sixth Circuit, *en banc*, has defined the components of the qualified immunity defense:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known. The procedure for evaluating claims of qualified immunity is tripartite: first, we determine whether a constitutional violation has occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the Appellee has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

Williams v. Mehra, 186 F.3d 685, 6 91 (6th Cir. 1999) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Dickerson v. McClellan, 101 F.3d 1151, 1157-58 (6th Cir. 1996)). "A claim of qualified immunity presents two closely linked questions: whether the Defendant violated the Plaintiff's rights and whether those rights were clearly established at the time of the violation." Phelps v. Coy, 286 F.3d 295, 299 (6th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001). As the Supreme Court explained, "[t]he court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [public official's] conduct violated a constitutional right? This must be the initial inquiry." Saucier v. Katz, supra at 201. As has been presented in this memorandum, Plaintiff cannot establish an unlawful patronage dismissal in this case against the Defendant as Plaintiff was terminated by the prior administration before leaving office, and as such, no constitutional violation exists. As of the date of her termination Plaintiff had no further property interest in employment. Sheriff Stines therefore is entitled to qualified immunity as a matter of law.

## E. **PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIMS FAIL AS A MATTER OF FACT AND LAW.**

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A government position, by itself, does not constitute a protected property interest. *Bailey v. Floyd Cnty. Bd. of Educ.,* 106 F.3d 135, 141 (6th Cir.1997). "Government employment amounts to a protected property interest if the employee is 'entitled' to continued employment." *Id.* (citing *Roth,* 408 U.S. at 577, 92 S.Ct. 2701). Whether a property interests exists primarily depends on state law. *Id.* Therefore, a government employee asserting a protected property interest in his position must

"point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *Id.* An at-will employee, or an employee who may be terminated without cause, does not have a protected property interest. *Id.* In Kentucky, an employee is at-will "unless the parties specifically manifest their intention to condition termination only according to express terms...." *Id.* (citing *Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 491 (Ky.1983)). See also *Jones v. Perry County Fiscal Court*, 185 F.Supp.3d 947, 955 (2016).

Kentucky courts have expressly held that employment for an indefinite period is at-will employment. *See Shah*, 655 S.W.2d at 491 ("*Edwards v. Ky. Utils. Co.*, 286 Ky. 341, 150 S.W.2d 916 (1941) ] is one of many cases in this jurisdiction holding that employment for an indefinite period of time may be terminated by either party at will."). Plaintiff cannot point to any statutory or contractual right which would support a legitimate property interest in continued employment after she was terminated by the prior sheriff. Further, Plaintiff did not apply for a position until over two weeks after Defendant took office.

Plaintiff must do more than assert a subjective entitlement to continued employment. Otherwise, newly elected public officials would be prohibited from *any* consideration of county affairs, or even thinking about county affairs. There exists no legal authority supporting such an argument. Here, the procedural due process claims fail as a matter of fact and law. Further, the reason Plaintiff was not re-hired was not due to any protected conduct. See Ex. 7, Affidavit of Stines.

F. **THERE EXISTS NO EVIDENCE OF A CUSTOM OR PRACTICE THAT WOULD GIVE RISE TO A COLORABLE DUE PROCESS CLAIM OR FIRST AMENDMENT CLAIM AGAINST THE LETCHER COUNTY SHERIFF'S OFFICE.**

Governmental entities such as the Office of Letcher County Sheriff cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory. Monell v. Department of Social

Services of City of New York, 436 U.S. 658, 691 (1978).  In order to state a claim against a governmental entity for an alleged constitutional violation, a plaintiff must show that the entity was a "moving force" behind a custom or practice of permitting such constitutional violations. *Id*. Plaintiff's claim of liability under 42 U.S.C. § 1983 against Office of Letcher County Sheriff must be based on "more than respondeat superior, or the right to control employees." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (citing Hays v. Jefferson County, Ky., 668 F.2d 869, 874 (6th Cir. 1982)).

Even assuming the Plaintiff can demonstrate an underlying violation of her constitutional rights, she still cannot hold the Office of Letcher County Sheriff or Letcher County liable in this matter as respondeat superior cannot be used to establish liability. Monell v. Dept. of Social Services, 436 U.S. at 691.  Plaintiff simply cannot state a claim against Office of Letcher County Sheriff for any alleged constitutional violation, since there does not exist any evidence it was a moving force behind a custom or practice of permitting unconstitutional position eliminations. As a result, no federal claim can be sustained against the Office of Letcher County Sheriff, and those claims should be dismissed as a matter of law.

Moreover, as demonstrated above, Plaintiff cannot show Defendant Mickey Stines, or any other county official, violated her First Amendment or procedural due process rights in this case. The Defendant acted lawfully at all times.  As such, Office of Letcher County Sheriff may not be held liable under Section 1983 for a policy or custom if the Plaintiff cannot establish a constitutional violation by one of its officials. Bowman v. Corrs. Corp. of America, 350 F.3d 537, 545-546 (6th Cir. 2003).  As Plaintiff cannot show the Defendant *violated* the Constitution, summary judgment is thus proper. Id. at 545-546.

# V. <u>CONCLUSION</u>

Plaintiff did not allege any state law claims in this action. Plaintiff was terminated by the prior sheriff before leaving office and while Plaintiff was under investigation for alleged criminal acts. In the case at bar, this Court should grant summary judgment and dismiss plaintiff's claims on the grounds that they fail to present any evidence from which a reasonable jury could conclude that defendant violated plaintiff's constitutional rights. Accordingly, summary judgment should be entered in favor of the defendants.

PORTER, BANKS, BALDWIN & SHAW, PLLC
327 Main Street, P.O. Drawer 1767
Paintsville, Kentucky  41240-1767
Telephone:     (606) 789-3747
Facsimile:     (606) 789-9862

*/s/ Jonathan C. Shaw*_____
Jonathan C. Shaw
jshaw@psbb-law.com
Counsel for Defendant

<u>CERTIFICATE OF SERVICE</u>:

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and further certify that I electronically mailed a true and correct copy of the foregoing to:

Ned Pillersdorf, Esq.
Pillersdorf, DeRossett & Lane
124 West Court Street
Prestonsburg, Kentucky 41653

This 30th day of December, 2019.

*/s/ Jonathan C. Shaw*_____
Jonathan C. Shaw