UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

| | |
|---|---|
| **ALISHA CONGLETON,** | **CIVIL ACTION NO. 7:19-20-KKC** |
| **Plaintiff,** | |
| **V.** | **OPINION AND ORDER** |
| **MICKEY STINES**, *Individually and in his official capacity as Letcher County Sheriff,* | |
| **Defendant.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on the motion for summary judgment (DE 17) filed by defendant Mickey Stines, who is the Letcher County sheriff. For the following reasons, the motion will be granted.

**I.      Facts**

The facts set forth in this opinion are not disputed. Plaintiff Alisha Congleton was employed in the Letcher County sheriff's office for almost four years. She began working there in February 2015 as a deputy sheriff. (DE 17-2 at 5-6.) While she was employed in the sheriff's office, the sheriff was Danny Webb. (DE 17-2 at 48.) Defendant Stines ran for sheriff in the May 2018 primary and in the November 2018 general election. It does not appear that Webb was his opponent in either of those races.

Defendant Congleton asserts that she openly supported defendant Stines' opponents in 2018 in both the primary and general elections. In an affidavit, Congleton states that, during the May primary election, she posted statements on social media urging people to vote for Stines' opponent, Eugene Slone, who was a

deputy in the sheriff's office at the time. (DE 20-4, Congleton Aff. ¶¶ 3-4; DE 20-6, Notice.)  Despite Congleton's efforts, Stines won the primary election. Congleton states that she later made various social media posts in which she praised Barry Engle, Stines' opponent in the November general election. Engle was a captain in the sheriff's office under Sheriff Webb. (DE 20-4, Congleton Aff. ¶ 4; 20-5, Notice.) Again, however, Stines won the election and became sheriff-elect.

Before Stines took office, Sheriff Webb announced that he was forced to lay off Congleton, Slone, and Engle effective December 13, 2018. According to the notice, the layoffs were "due to end of the year budget constraints." (DE 17-4, Notice.) At that point, Congleton was a sergeant in the sheriff's office. (DE 17-2, Congleton Dep. at 67-68.)

Later in December, Congleton posted on social media that she did not support Stines in the 2018 election because "he simply does not have the moral compass or training to be a Sheriff." (DE 17-6, post.)

Stines took office in January 2019. By application dated January 17, 2019, Congleton applied for a position as deputy sheriff or sergeant under Sheriff Stines. (DE 17-7, Application.) He did not hire her.

She asserts two constitutional claims under 42 U.S.C. § 1983. First, she asserts that Sheriff Stines violated her First Amendment rights by failing to hire her as a deputy in retaliation for her political support of Stines' opponents. (DE 1, Complaint, ¶ 3.) Second, she asserts a claim under the Fourteenth Amendment. (DE 1, Complaint, ¶ 13.)

## II.    Analysis

To establish a prima facie case on a First Amendment retaliation claim, a plaintiff must show that: 1) she engaged in constitutionally protected activity; 2) she was subjected to adverse action or was deprived of some benefit; and 3) the protected activity was a substantial or a motivating factor in the adverse action. *Leary v. Daescher*, 349 F.3d 888, 897 (6th Cir. 2003). Once the plaintiff has met her burden to establish a prima facie case, the burden of persuasion shifts to the defendant to show that there were other reasons for the adverse action and that the same adverse action would have resulted even if the plaintiff had not engaged in the protected activity at issue. *Id*. at 898.

The first issue then is whether Congleton's political support of Stines' opponents for Letcher County sheriff is constitutionally protected activity. The right of political association is a "well-established right" because "political belief and association constitute the core of those activities protected by the First Amendment." *Sowards v. Loudon County, Tennessee*, 203 F.3d 426, 432 (6th Cir. 2000) (citation omitted). Supporting a political candidate clearly falls within the scope of political association intended by the First Amendment. *Id*.

This does not end the analysis of constitutionally protected activity, however, because Congleton claims she was denied a position as a *public* employee. In *Pickering v. Board of Education*, 391 U.S. 563 (1968), the Supreme Court recognized that the government has an interest in maintaining a productive workplace that must be weighed against a public employee's First Amendment rights. Pursuant to *Pickering*, "public employee speech, even if touching on matters of public concern, will not be constitutionally protected unless the employee's interest in speaking on

3

these issues outweighs the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1053 (6th Cir. 2001) (internal brackets, citations, and quotations omitted). A public employer is not required to "tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." *Connick v. Myers*, 461 U.S. 138, 154 (1983).

In striking the balance between the government's and the employee's respective interests, the court should "consider whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Kentucky*, 24 F.3d 1526, 1536 (6th Cir. 1994).

If an employee's speech "substantially involved matters of public concern, an employer may be required to make a particularly strong showing that the employee's speech interfered with workplace functioning before taking action." *Leary v. Daeschner*, 228 F.3d 729, 737-38 (6th Cir. 2000) (quotations and citation omitted). Supporting a political candidate during a campaign "substantially involves matters of public concern." Thus, Stines will have to make a stronger showing that his interest in regulating Congleton's speech outweighed her interests in speaking.

In his motion for summary judgment, Stines points out that, in *Heggen v. Lee*, 284 F.3d 675 (6th Cir. 2002), the Sixth Circuit cited cases in other circuits holding that deputy sheriffs can be dismissed for their political activities. *Id.* at 685-86 (citing *Jenkins v. Medford,* 119 F.3d 1156, 1164 (4th Cir.1997); *Upton v. Thompson,* 930 F.2d 1209, 1218 (7th Cir.1991); *Terry v. Cook,* 866 F.2d 373, 377

(11th Cir.1989)). In *Heggen*, however, the Sixth Circuit rejected the plaintiff's argument that these cases stand for the blanket proposition that, in all instances, the political affiliations of deputy sheriffs can be taken into account in a sheriff's hiring and firing decisions. *Id*. at 686.

Instead, the court instructed that the determination must be made "on a case-by-case basis," considering the specific record before the court. *Id*. Determining whether the plaintiffs' interest in speaking outweighs the government employer's interest in performing its functions efficiently requires a "particularized balancing" of the various interests at stake. *Connick*, 461 U.S. at 150.  Indeed, after reviewing the record available in *Heggen*, the Sixth Circuit held that the defendant sheriff had "failed to meet his burden of showing that deputy sheriffs in Hopkins County may be dismissed because of political affiliation." *Heggen*, 284 F.3d at 686.

In determining whether political affiliation may be taken into account in hiring for a particular position, the court's particularized, case-by-case analysis "should focus on the inherent duties of the position itself, and the duties that the new holder of the position will perform." *Id*. at 681. "[T]he hiring authority ultimately must demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id*. at 681-82 (quotations and citation omitted).

Stines has presented no evidence regarding the duties of the Letcher County deputy sheriffs. Nor has he presented any evidence that the efficient operation of the Letcher County sheriff's office requires that he consider the political activities of applicants when making hiring decisions.

Stines submits his own affidavit (DE 17-8, Stines Aff.), but in it he does not even mention the duties of deputy sheriffs in his office or his need to consider the political activities of applicants for the position. Thus, as was the case in *Heggen*, Stines has failed to meet his burden of showing that the Letcher County sheriff can refuse to hire deputy sheriffs because of their political activities. Accordingly, the Court must find that Congleton was engaged in constitutionally protected activity when she campaigned for Stines' opponents in the 2018 elections.

The next issue is whether Congleton was subjected to an adverse action or deprived of some benefit. Stines argues that the adverse employment action was Congleton's termination as a deputy, and he points out that Sheriff Webb, not Stines, took that action. But the Court construes Congleton's complaint to assert that the adverse action against her was, not that she was fired by Webb, but that Stines did not hire her after he took office in January 2019. (DE 1, Complaint, ¶¶ 3, 10, 13.) A refusal to hire someone is considered an adverse action for purposes of a First Amendment retaliation claim. *Sensabaugh v. Halliburton*, 937 F.3d 621, 628 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 1116 (2020).

The final issue on Congleton's prima facie case is whether she has produced evidence that her support of Stines' opponents was "a substantial or a motivating factor" in Stines' decision to fail to hire her. "To demonstrate this causal connection, a plaintiff is required to proffer evidence sufficient to raise the inference that his or her protected activity was a motivating factor for the adverse decision." *Arnett v. Myers*, 281 F.3d 552, 560 (6th Cir. 2002). The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause – without which the action being challenged simply would not have been taken." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir.2007).

6

Thus, to establish the causal link between her support of Stines' opponents during the 2018 campaign and Stines' failure to hire her, Congleton must produce evidence that Stines would have hired her if she had not supported his opponents. Importantly, "[b]ecause direct evidence of motive is difficult to produce, claims involving proof of a defendant's intent seldom lend themselves to summary disposition, and circumstantial evidence may provide sufficient evidence of retaliatory intent to survive summary judgment." *Kennedy v. City of Villa Hills, Ky.*, 625 F.3d 210, 218 (6th Cir. 2011). Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals, may support an inference that the defendant retaliated against the plaintiff. *Arnett v. Myers*, 281 F.3d 552, 560–61 (6th Cir. 2002). But the plaintiff must point to "specific, nonconclusory evidence reasonably linking her speech to the adverse action." *Garcia v. Thorne*, 520 F. App'x 304, 310 (6th Cir. 2013).

Here, Congleton submits an affidavit by Engle, Stines' opponent in the November 2018 election. Engle states that Stines told him that Congleton was "'killing him' in getting votes in the Jenkins precinct of Letcher County." (DE 20-2, Engle Aff.) Engle states that he understood that Stines meant that Congleton's actions during the campaign caused Stines to lose votes in the Jenkins area. Engle states that "it was obvious" that "Stines was aware that Alisha Congleton was openly campaigning against him and that it was irritating him." (DE 20-2, Engle Aff.)

Congleton also submits the affidavit of Eugene Slone (DE 20-3, Aff.), Stines' opponent in the May 2018 election. Slone states that Stines complained to Sheriff Webb and Engle that Congleton posted photos wearing a shirt supporting Slone's candidacy. Slone states that Stines "continuously" came to the Sheriff's office to

complain about Congleton's campaign activities. Slone states he believed that Stines was upset that Congleton's action would cost him votes. Slone also states that it was obvious to him that Stines was aware of and irritated by Congleton's campaign activities.

While the Engle and Slone affidavits are evidence that Stines was irritated and upset about Congleton's speech against him, they are not evidence that her political activity was a "substantial or motivating factor" in Stines' failure to hire Congleton as a deputy. Neither Engle nor Slone provide a "causal link" between Stines' irritation with Congleton's speech and his failure to hire her. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir.2003).

Congleton submits her own affidavit in which states that she is "convinced that her exercise of her first amendment rights in actively campaigning against Stines in both the May and November elections were the substantial factor in causing her not to keep her employment." (DE 20-4, Aff.) She states that, after he was elected, Stines told her he was "going to fire her," and she states "it was clear from the context of the statement that he did so because [he] was fully aware that [she] had campaigned against him." These statements, however, are conclusory statements by Congleton regarding her own thoughts on Stines' motives. They are not evidence from which a jury could reasonably infer that Stines' irritation with Congleton's political activities was a substantial factor in his failure to hire her.

In her affidavit, Congleton also states that two deputies – Mike Enfus and Lashonna Frazier – who supported Stines during the campaign continue to work for the Letcher County Sheriff's Department. In contrast, Congleton states that she and Engle were not retained because they did not support Stines. Disparate treatment of similar individuals can support an inference that a defendant was substantially

8

motivated by retaliation. *Arnett v. Myers*, 281 F.3d 552, 560–61 (6th Cir. 2002). The problem for Congleton, however, is that she provides no evidence that Enfus and Frazier were similarly situated to her. Her affidavit suggests that Enfus and Frazier worked at the sheriff's office under Sheriff Webb and were still working there when Stines took office. Congleton, on the other hand, was laid off by Sheriff Webb. She is not similarly situated to deputies who were not laid off by the former sheriff and who were working at the sheriff's office when Stines took office.

After briefing was completed on Stines' summary judgment motion, Congleton moved to submit other materials to support her claim. Stines did not object to the Court considering the additional materials. In fact, he argued the material actually supported summary judgment in his favor.

The first supplemental material is what Congleton alleges to be the transcript of a November 15, 2018 telephone conversation that she recorded between her and Randall Robinson. (DE 23). While Congleton does not explain who Robinson is, it appears from the transcript that, at least at the time of the conversation, he was employed by Letcher County Emergency Medical Services. (DE 23-2, Tr. at 7.) In his only statement regarding Stines' motives for failing to rehire Congleton, Robinson discusses "some kind of case on animal cruelty or something [involving] one of [Stines'] neighbors." (DE 23-2, Tr. at 4.) Congleton herself responds, "Yeah that's exactly the only reason he doesn't like me is over that case and you know me and how I love animals. I'm going to do what's right." Congleton states that Stines' neighbors were running a "puppy mill" and the animals were in "terrible situations." Thus, she "took care of the problem." She states that "apparently [Stines] promised these people he'd fire me so." (DE 23-2, Tr. at 5.) Later, she asks "why would you fire somebody for saving an innocent animal?" (DE 23-2, Tr. at 6.) While any failure to

rehire an employee because she stopped animal neglect or cruelty may be troubling, it does not support Congleton's claim that she was not hired because she supported Stines' opponents in the 2018 elections.

The second item of supplemental material submitted by Congleton is a memorandum (DE 24) from Engle to former Sheriff Webb that was completed while Webb was sheriff. The memorandum summarizes an investigation that Engle conducted into Congleton's alleged "improper use of a health benefits card." (DE 24-2, Mem. at 1.) Engle states, "Apparently the Commonwealth Attorney Edison Banks had called Sheriff Webb and informed him that the Letcher County Judge Executive Jim Ward's Office had received a complaint accusing Sgt. Congleton of getting cash advances from her health benefits account credit card at Boggs Pharmacy in Jenkins[,] Kentucky." Engle's memorandum does not contain any information from which it can be inferred that Stines failed to rehire Congleton because of her political activities. It does not address Stines' failure to hire Congleton at all. In fact, the memorandum is dated October 9, 2017, long before the 2018 elections and before Stines took office.

Because Congleton has not submitted sufficient evidence to permit an inference that Sheriff Stines failed to hire her because of her political activity, the Court must grant Sheriff Stines' motion for summary judgment on her First Amendment retaliation claim.

As for Congleton's Fourteenth Amendment claim, it appears this claim is based on the same facts she asserts in support of her First Amendment claim. Her complaint mentions the Fourteenth Amendment in only one sentence, which states, "The Plaintiff alleges claims under the First and Fourteenth Amendments and alleges that the Defendant violated her First Amendment Right of speech and

10

association by failing to rehire her." (DE 1, Complaint, ¶13.) It is not clear from the complaint whether Stines asserts a procedural or substantive due process claim. In his motion for summary judgment, Stines interprets the complaint to assert a procedural due process claim. In her response, Congleton also calls her due process claim "procedural." (DE 20-1, Response at 4-5.) Whether substantive or procedural, the claim fails.

For a procedural due process claim, Congleton "must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process." *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 762 (6th Cir. 2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–570 (1972)). Congleton does not even argue that she has a protected property interest in a deputy sheriff job. Accordingly, any procedural due process claim fails.

If, on the other hand, Congleton is asserting a substantive due process claim, that claim fails because it is based on the same facts as her First Amendment claim. Congleton's complaint sets forth no different facts in support of a due process claim. In her response brief, Congleton argues that there is a factual dispute as to "whether or not the Defendant denied the Plaintiff a fair hiring process due to her political support of his opponents." (DE 20-1, Mem. at 5.) The First Amendment explicitly protects the individual right to engage in political activities. Thus, any claim that the defendant violated that right must be asserted under the First Amendment and not under "the more generalized notion of 'substantive due process.'" *Graham v. Connor*, 490 U.S. 386, 395 (1989). *See also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842–43 (1998); *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

As to the claims against Stines in his official capacity as the Letcher County sheriff, these claims are treated as claims against the county. Official-capacity suits are simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). In her complaint, Congleton does not mention any unconstitutional county custom or policy, which is necessary for municipal liability under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978); *Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999). Congleton does not address the official-capacity claim at all in her response to Stines' motion for summary judgment. Thus, this claim must be dismissed as a matter of law.

**III.    Conclusion**

For all these reasons, the Court hereby ORDERS that Stines' motion for summary judgment (DE 17) is GRANTED. The Court will enter a judgment consistent with this opinion.


Dated June 11, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

12